IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:10-CR-128-01** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **JULIUS MONYOUKAYE**, | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Presently before the court is a motion (Doc. 103) to withdraw a guilty plea filed by defendant Julius Monyoukaye ("Monyoukaye"). Monyoukaye seeks to withdraw his guilty plea and claims that he was "coerced into a plea as his only hope." (Doc. 103 ¶ 14). For the following reasons, the motion will be denied.

I.   **Procedural Background**

On April 21, 2010, the government filed a three-count indictment against Monyoukaye. (Doc. 1). Monyoukaye was charged with distribution and possession with intent to distribute heroin, marijuana, and 50 grams and more of cocain base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), (b)(1)(B) and (D) and 18 U.S.C. § 2 (Count I), being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count II), and possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count III). Id.

Monyoukaye's case proceeded to trial on January 4, 2011. On January 5, outside the presence of the jury, the government informed Monyoukaye of his status as a career criminal and that he faced the possibility of 360 months to life in prison. (Doc. 104 at 5). Monyoukaye claims to have been previously unaware of his

status as a career criminal. (Doc. 104 at 5). Upon learning of his status, Monyoukaye immediately entered a binding plea agreement pursuant to FED. R. CRIM. P. 11(c)(1)(C) and pled guilty to count I of the indictment. (Doc. 86). The plea agreement provides for dismissal of the remaining counts of the indictment at the time of sentencing. (Id. ¶ 1). The plea agreement includes a fine of $2,000, a special assessment of $100, and a sentence of fifteen years imprisonment followed by five years supervised release. (Id. ¶ 11). Following a thorough colloquy, the court agreed to accept the plea of guilty, but deferred acceptance of the Rule 11(c)(1)(C) plea agreement, pending review of the presentence investigation report. (Doc. 105 at 20). At the plea hearing, the court specifically determined that Monyoukaye was "fully alert, competent and capable of entering an informed [plea], and that [the] plea [was] a knowing and voluntary plea, supported by an independent basis in fact containing each of the essential elements of the offenses pled to." (Id. at 32-33.)[1]

On January 25, 2011, twenty days after entering his guilty plea, Monyoukaye filed *pro se* motions to remove (Doc. 89) his trial counsel, ("trial counsel"), and to withdraw the guilty plea (Doc. 90). The court granted the motion to remove trial counsel and appointed new counsel. (Doc. 98). The court dismissed the motion to

---

[1] The court explicitly informed Monyoukaye of the purpose of the colloquy and questioned him about his understanding of the terms of the plea, the charges to which he was admitting, and whether he was pleading of his own free will. (Doc. 105). Further, the court made certain that Monyoukaye understood the implications of his plea through the rephrasing of questions, (id. at 18-20), the modifying of the plea agreement, (id. at 9), and the pausing of the proceedings to allow Monyoukaye to consult with his attorney six times, (id. at 7-8, 16, 20-21, 31), during the hearing.

withdraw the guilty plea without prejudice to Monyoukaye's right to seek the same relief with assistance of counsel. (Id.) Monyoukaye filed a renewed motion to withdraw his guilty plea, through his newly appointed counsel, on April 26, 2011. (Doc. 103). In this motion, Monyoukaye argues that trial counsel did not inform him of his status as a career criminal or the resulting possibility of a life sentence. (Id.) Monyoukaye therefore argues that being surprised during trial with the prospect of life imprisonment, because of his status as a career criminal, "involuntarily and unknowingly coerced [him] into a plea." (Doc. 104 at 6).

## II. Factual Background

The evidence that the government would have presented at trial, (id. at 26-30), and which Monyoukaye admitted is true, (id. at 32), is as follows:

On February 26, 2010, several FBI Special Agents were conducting an investigation at Extra Space Storage, located in York, Pennsylvania. Specifically, they were investigating a possible connection between a storage unit at Extra Space and a major cocaine trafficker in the Philadelphia area, Nyene Baker. Baker had been previously arrested and had in his possession a piece of paper with the address of the storage facility in York, the gate code number 1020, and the storage unit number C12. This information prompted them to go to the Extra Space facility in York, to gather information.

The officers learned from Extra Space employees that unit C12 was rented on February 20, six days prior, by an individual who identified himself as Eric Richards. When Eric Richards rented the unit, he was accompanied by another

individual, who identified himself as Jamal Richards. Eric indicated that he was renting the locker for Jamal, because Jamal could not provide identification. Extra Space employees told the officers that the renter of each storage unit receives a unique code with which he can access the facility through the security gate. Jamal Richards requested the four-digit code 1020. The code 1020 was therefore assigned uniquely for unit C12.

The officers called a Pennsylvania State Police K-9 officer to the scene. Before the K-9 officer arrived, an Extra Space employee informed the officers that the code 1020 was just entered at the security gate. The driver of the vehicle had entered the code and proceeded to drive toward unit C12. One agent walked toward the car, showed his badge and ordered the vehicle to stop. After the third instruction to stop, the driver put the vehicle in reverse and drove it back down the row of storage units. More agents pulled behind the fleeing vehicle and successfully stopped it.

Monyoukaye, who was the driver,[2] identified himself as Jamal Jenkins but he was unable to produce any formal identification, such as a driver's license. The agents took a photograph of Monyoukaye and showed it to the Extra Space employee who rented unit C12 to Eric and Jamal Richards. The employee identified Monyoukaye in the photograph as the same man who had identified

---

[2] The driver was later fingerprinted at the booking center, and the fingerprint check revealed that his true identity was Julius James Monyoukaye.

himself as Jamal Richards six days earlier. The officers then placed Monyoukaye under arrest and took him for booking.

Shortly thereafter, the agents learned that the Pennsylvania State Police K-9 unit had arrived at Extra Space. The K-9 stopped at unit C12 and gave the trained response for the scent of controlled substances. The agents searched the storage unit and discovered approximately four pounds of marijuana, various drug packaging and concealment items, and an AK-47 assault rife. Law enforcement authorities also searched Monyoukaye, pursuant to standard procedure,[3] and recovered fifteen packets[4] of crack cocaine, which had been concealed in his rectum.

The evidence that the government prepared for trial also included testimony from an informant who would identify Monyoukaye as a seller of heroin, crack cocain, and marijuana. The informant advised government agents that Monyoukaye obtained at least sixty bricks of heroin[5] and 750 grams of crack cocain through multiple trips to his suppliers. Additionally, two more informants, who are drug dealers themselves, would testify that Monyoukaye supplied the heroin that

---

[3] All individuals arrested for narcotics offenses are strip searched at the booking center. They are given an opportunity to identify anything concealed on their person prior to the search, but the search is conducted regardless of whether or not they identify anything.

[4] The fifteen packets contained a total of approximately two grams of crack cocaine.

[5] Thirty bricks of heroin is comprised of about 1,500 envelopes and has a total weight of approximately 37 grams.

they sold. Specifically, one of these two informants would testify that Monyoukaye was the source of 180 packs of heroin that police found in the informant's home. (Id. at 26-30.)

**III.   Discussion**

Rule 11 of the Federal Rules of Criminal Procedure governs the entry, acceptance, and withdrawal of plea agreements and guilty pleas by a criminal defendant. A defendant who pleads guilty has no absolute right to withdraw his plea after it has been entered. See United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001). The defendant may later move to withdraw the guilty plea after the court accepts it, and before the court imposes sentence; however, the defendant shoulders a heavy burden to "show a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B); see also United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003).[6] A defendant may not withdraw a guilty plea at his whim. Brown, 250 F.3d at 815. Shifts in defense strategy, a change of heart by the defendant, or fears of punishment if the defendant upholds his obligations under a plea agreement are insufficient to warrant withdrawal. See Jones, 336 F.3d at 252; Brown, 250 F.3d at 815.

---

[6] The decision in Jones and decisions prior to the 2002 Amendments to the Federal Rules of Criminal Procedure invoke the "fair and just reason" analysis pursuant to Rule 32 of the Federal Rules of Criminal Procedure. The substance of this rule regarding withdrawal of guilty pleas was subsequently transferred to Rule 11(d) and (e). See FED. R. CRIM. P. 32 advisory committee notes (2002 Amendments); see also FED. R. CRIM P. 11 advisory committee notes (2002 Amendments).

The court evaluates a motion to withdraw guilty plea in light of the following three factors: "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdraw." See United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting Jones, 336 F.3d at 252); United States v. Huff, 873 F.2d 709, 712 (3d Cir. 1989). The defendant's failure to establish one factor is not fatal to a motion to withdraw guilty plea. See United States v. Wilder, 134 F. App'x 527, 528 (3d Cir. 2005) (citing Jones, 336 F.3d at 252-55). The court must balance each of the factors and determine whether there is a fair and just reason for withdrawal of the plea. Id.

### A. Assertion of Innocence

Assertions of innocence must be supported by facts in the record that support a claimed defense. Brown, 250 F.3d at 818. In the instant matter, Monyoukaye asserts his factual innocence. (Doc. 104 at 3). However, he provides nothing but bald assertions in support for his innocence. Monyoukaye claims that he went to the storage unit complex to pick up discarded furniture, that unit C-12 is not his, and that the drugs and guns therein are not his either. (Doc. 104 at 3). He does not address how he knew the unique access code associated with unit C-12, why the employees of the storage complex identified him, or whether the statements of the informants are true. "Bald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea . . . [they] must be buttressed by facts in the record that support a claimed defense." Jones, 336 F.3d

7

at 252 (citing Brown, 250 F.3d at 818). The court concludes that Monyoukaye's unsupported assertions of innocence do not satisfy the first factor for a plea withdrawal.

Monyoukaye requests, in the alternative, a hearing to present "evidence sufficient to justify the relief . . . requested." (Doc. 104 at 7). The Third Circuit has held that a hearing is unnecessary when the claims set forth in the motion to withdraw are "inherently unreliable, are not supported by specific facts or are not grounds for withdrawal even if true." United States v. Thompson, 48 F. App'x 24, 25 (3d Cir. 2002) (quoting United States v. Thompson, 906 F.2d 1292, 1299 (8th Cir. 1990)); see also United States v. Moore, 931 F.2d 245 (4th Cir. 1991), *cert. denied*, 502 U.S. 857, 112 S. Ct. 171 (1991) (holding that a hearing need only be granted when fair and just reason for withdrawal of plea is presented); United States v. Cotal-Crespo, 847 F.Supp. 991 (D.P.R. 1994), *aff'd,* 47 F.3d 1 (1st Cir. 1995), *cert. denied*, 516 U.S. 827, 116 S. Ct. 94 (1995) (movant requesting hearing on motion to withdrawal bears the burden of demonstrating special need).

Monyoukaye presents no specific facts, only his broad and conclusory declarations. (See Doc. 104 at 3). Further, these declarations contradict only a fraction of the substantial evidence against him. (Compare id., with Doc. 105 at 26-30). The court finds that Monyoukaye has failed to demonstrate a special need for an evidentiary hearing and has failed to present reliable facts, specific facts, or facts which would constitute reasonable grounds for withdrawal. Therefore, the court denies the request for an evidentiary hearing.

**B.     Strength of Monyoukaye's Reasons for Withdrawing his Plea**

Monyoukaye's asserted reasons for withdrawing his guilty plea are that trial counsel was ineffective for not informing him that the trial was beginning, for being unprepared and unwilling to advance claims that [Monyoukaye] wished to raise at trial, and failing to inform Monyoukaye of his status as a career criminal. The intelligent and voluntary nature of a plea is negated when counsel provides a defendant with ineffective assistance. See United States v. Smith, Criminal No. 1:05-CR-0329, 2006 WL 2645153, at *4 (M.D. Pa. Sept. 14, 2006) (citing Hill v. Lockhart, 474 U.S. 52, 56-57 (1985)). A court may permit a defendant to withdraw his guilty plea on the basis of ineffective assistance of counsel when a defendant establishes that: (1) "his attorney's advice was under all the circumstances unreasonable under prevailing professional norms," and (2) "he suffered 'sufficient prejudice' from his counsel's errors." Jones, 336 F.3d at 253-54 (citing United States v. Day, 969 F.2d 39, 42, 45 (3d Cir. 1992) and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

Monyoukaye asserts ineffective assistance of counsel, claiming that trial counsel was "unprepared and unwilling to advance the claims that he wished to raise at trial." (Doc. 104 at 5). Monyoukaye has not delineated specific examples of trial counsel's lack of preparation. Indeed, trial counsel ably represented Monyoukaye through jury selection, opening statements, and the initial testimony presented at trial. (See Doc. 78). Further, while a client has final say on certain decisions, such as whether to accept a plea agreement or to testify at trial, counsel

9

has latitude in formulating a trial strategy. PA. R. PROF'L CONDUCT Rules 1.2(a), 1.4(a)(2). Because of the lack of any evidence to corroborate Monyoukaye's claims of trial counsel's unpreparedness, this court finds that Monyoukaye's first ground for ineffective assistance of counsel does not show sufficient prejudice.

Monyoukaye also challenges the effectiveness of counsel on the basis that he was not aware that he was going to trial on January 4, 2011—rather, he believed that he was going to a second suppression hearing on the date that was, in fact, the first day of his trial. While it is expected that trial counsel would have kept Monyoukaye abreast of the progress of his case, it is incumbent upon Monyoukaye to demonstrate that his counsel's alleged failure to do so "was under all the circumstances unreasonable under prevailing professional norms," and that he suffered "sufficient prejudice" as a result. Jones, 336 F.3d at 253-54.

This court does not find Monyoukaye's alleged lack of knowledge to be credible. Numerous scheduling orders explicitly set the dates for jury selection and trial. Furthermore, at the end of the hearing on Monyoukaye's motion to suppress, a discussion ensued—on the record and in Monyoukaye's presence—contemplating trial as the next stage in his case's progression. (Doc. 23 at 75-76). Hence, Monyoukaye was aware that his case was going to trial after the court ruled on his motion to suppress. Monyoukaye even hand-wrote a "request for pretrial discovery," dated December 8, 2010, which the court received on December 13, 2010. (Doc. 64). Thus, the record is replete with evidence that Monyoukaye was aware of his case's progression towards trial. Admittedly, the record also contains

10

indications that Monyoukaye was unhappy with his counsel's arguments for suppression, and that he wished the court to reconsider the issue. (Doc. 75). However, the pending motion does not present any reasonable basis for Monyoukaye to have believed that the court granted his requests for reconsideration of the suppression issue, in lieu of proceeding to trial as scheduled. For all of these reasons, the court concludes that Monyoukaye has failed to show that his trial counsel's advice and conduct were unreasonable under prevailing norms, or that he was sufficiently prejudiced. The court therefore finds Monyoukaye's second ground for ineffective assistance of counsel to be unpersuasive.

Finally, Monyoukaye asserts ineffective assistance of counsel because trial counsel did not inform him that he was a career criminal and therefore subject to the possibility of life in prison. However, there is no evidence that Monyoukaye's status as a career criminal somehow coerced his plea. To the contrary, it provides a logical basis for a binding plea agreement and nothing transpired during the plea hearing which suggested otherwise. The purpose of the colloquy at the plea hearing was to "establish for the record that [Monyoukaye] fully and completely underst[ood] [his] rights under the law, as well as the consequences of a guilty plea." (Doc. 105 at 2). The colloquy lasted 45 minutes. The plea agreement was explained in detail, and Monyoukaye took advantage of the opportunity to speak privately with his counsel on six separate occasions. The court considers the number of times that Monyoukaye spoke with his attorney to be significant, as

11

evidence that he was fully engaged at the plea hearing, that he considered the questions carefully, that he made informed responses, and that he did not hesitate to raise issues of concern.

Based on Monyoukaye's responses during the plea hearing, the court finds that Monyoukaye was fully aware of his options to go to trial or accept the plea agreement, as well as the consequences of each. Even if it is true that Monyoukaye was unaware of his status as a career criminal when he arrived at trial, the plea bargain was not entered into lightly. The court made certain that Monyoukaye was thinking clearly and was not influenced by anything other than his own will. Therefore, the court finds that the third basis for ineffective counsel did not establish sufficient prejudice to satisfy the Strickland test.

In conclusion, the court finds that Monyoukaye failed to support a claim of ineffective assistance of counsel, and thus, his reasons for withdrawing the plea are not strong enough to satisfy the second factor for withdrawal.

### C.   **Prejudice to the Government**

When a defendant fails to satisfy the other factors to support a withdrawal of a guilty plea, the government need not show prejudice. Jones, 336 F.3d at 255 (citing United States v. Harris, 44 F.3d 1206, 1210 (3d Cir. 1995)). Therefore, because the court has found that Monyoukaye failed to satisfy the first two factors for withdrawal, the court need not address the third.

**IV.**     **Conclusion**

Monyoukaye has failed to assert a "fair and just" reason to withdraw his guilty plea. Monyoukaye asserts his factual innocence, but offers neither reliable nor specific facts which would constitute grounds for withdrawal. His reasons for wanting to withdraw his guilty plea are unsupported and the court does not find trial counsel's assistance to have been unreasonable under prevailing professional norms. The court finds that Monyoukaye made a knowing and voluntary guilty plea, as supported by his responses during the plea hearing. Monyoukaye's motion (Doc. 104) to withdraw his guilty plea is therefore denied.

An appropriate order follows.

      S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:      June 14, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO. 1:10-10-128-01 |
| | : |
| v. | : (Judge Conner) |
| | : |
| **JULIUS JAMES MONYOUKAYE**, | : |
| | : |
| **Defendant** | : |

## **ORDER**

AND NOW, this 14th day of June, 2011, upon consideration of the motion (Doc. 103) to withdraw guilty plea filed by defendant Julius Monyoukaye, and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 104) is DENIED.

                                                       S/ Christopher C. Conner
                                                      CHRISTOPHER C. CONNER
                                                      United States District Judge