# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : CRIMINAL NO 1:10-CR-00128 |
| | : |
| v. | : **(Chief Judge Conner)** |
| | : |
| **JULIUS JAMES MONYOUKAYE** | : |

## MEMORANDUM

Presently before the court is the *pro se* motion (Doc. 151) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255,[1] filed on August 26, 2013, by Julius James Monyoukaye ("Monyoukaye"). In his motion, Monyoukaye asserts a claim for ineffective assistance of counsel stemming from his allegedly involuntary guilty plea agreement. Monyoukaye asks the court to vacate his sentence and conviction and permit him to renegotiate his plea agreement with the assistance of new counsel. (Id.) For the reasons that follow, Monyoukaye's Section 2255 motion will be denied.

## I.  **Factual & Procedural Background**[2]

On April 21, 2010, a federal grand jury returned an indictment charging Monyoukaye with distribution and possession with intent to distribute heroin, cocaine base, and marijuana in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), (b)(1)(B) and (b)(1)(D) (Count I), felon in possession of a firearm in violation of

---

[1] See 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

[2] This factual summary is derived from the record before the court and the facts alleged in Monyoukaye's § 2255 motion to the extent those facts do not conflict with irrefutable record evidence.

18 U.S.C. § 922(g)(1) (Count II), and possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count III). (Doc. 1). On June 1, 2010, through his trial counsel Gerald Lord, Esquire, ("Attorney Lord"), Monyoukaye filed a motion (Doc. 17) to suppress evidence found on his person at the time of his arrest. Following a hearing and several briefing extensions, the court issued an order (Doc. 42) on November 2, 2010, denying the motion. The matter was then scheduled for trial.

Trial commenced on January 4, 2011. On January 5, 2011, before a second day of trial began, counsel for the government informed Monyoukaye of his status as a career criminal and advised him that he faced the possibility of 360 months to life in prison. (Doc. 104 at 5). After a brief recess, Monyoukaye advised the court that he wished to enter into a plea agreement with the government. Monyoukaye then signed a written plea agreement wherein he agreed to plead guilty to Count I of the indictment. (Doc. 86). The plea agreement contained the following pertinent provisions: a binding sentence stipulation pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) whereby the parties' agreed to a sentence consisting of a term of imprisonment of 180 months (fifteen years), a term of supervised release of five (5) years, and a $2,000 fine (id. at ¶ 11); an appellate waiver in which Monyoukaye agreed to waive both his right to direct appeal pursuant to 18 U.S.C. § 3742 and his right to collateral appeal, including appeals pursuant to 28 U.S.C. § 2255 (id. at ¶ 21); and an acknowledgment by Monyoukaye as follows: "I have read this agreement

2

and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it." (Id. at 17).

The court then conducted a guilty plea colloquy with Monyoukaye. (See Doc. 105). That colloquy, in pertinent part, proceeded as follows:

> Q: Is it your desire to give up your right to a jury trial and to enter a plea of guilty as set forth in the plea agreement? That would be a guilty plea to Count I of the indictment.
>
> A: Yes.
>
> . . .
>
> Q: The last question that I posed to you, Mr. Monyoukaye, was whether or not you had enough time to speak with your attorney about all aspects of the plea agreement and whether or not you have had all of your questions answered. Now that we've addressed this concern of yours, do you feel as though you've had enough time to speak with your attorney about this matter and have you had all of your questions answered?
>
> A: Yes.
>
> Q: Immediately above your signature in this plea agreement is an acknowledgment, and that acknowledgment states as follows: "I have read this agreement and carefully reviewed every part of it with my attorney. I fully understand it and I voluntarily agree to it." Is that statement accurate, Mr. Monyoukaye?
>
> A: Yes.
>
> . . .
>
> Q: And, Mr. Monyoukaye, the question that I posed to you is other than the terms that appear in your plea

agreement did anyone offer or promise you anything else in order to get you to plead guilty?

A: No.

. . .

Q: Are you doing this of your own free will?

A: Yes.

. . .

Q: Now, ordinarily you would have the right to bring later proceedings such as a direct appeal or a collateral attack with a habeas motion to challenge your conviction or sentence. Do you understand that this plea agreement severely limits your right to appeal and prevents you from using later proceedings to challenge your conviction, your sentence, any pretrial motions that you filed, or any other matter?

A: Yes.

Q: I would like you to turn to the appeal waiver section which is on page 13, paragraph 21. This paragraph states as follows:

"The defendant is aware that Title 18, United States Code, Section 3742, affords a defendant with the right to appeal the conviction and sentence imposed. Acknowledging all of this, the defendant knowingly waives the right to appeal any conviction and sentence on any and all grounds as set forth in Title 18, United States Code, Section 3742, or any other grounds, constitutional or nonconstitutional, including the manner in which that sentence was determined in light of the Supreme Court's decision of <u>United States v. Booker</u>. The defendant also waives the defendant's right to challenge any conviction or sentence or the manner in which the sentence was determined in any collateral proceeding, including, but not limited to, a motion brought under Title 28 of the

4

>     United States Code, Section 2255." Have you had
>     the opportunity to review in detail all aspects of
>     this paragraph with your attorney?
>
> A: Yes.
>
> Q: And do you understand the breadth and scope of
>    this appellate waiver?
>
> A: Yes.
>
> Q: Do you have any questions of the court regarding
>    the nature or extent of this appellate waiver?
>
> A: No.
>
> Q: With all of the information that we have reviewed
>    so far this morning, is it still your desire to plead
>    guilty, Mr. Monyoukaye?
>
> A: Yes.
>
> Q: And are you pleading guilty of your own free will
>    and because you are in fact guilty as charged in
>    Count I of the indictment?
>
> A: Yes.
>
> Q: Do you have any questions of the court regarding
>    anything that we have covered so far or anything
>    that appears in your plea agreement?
>
> A: No.

(Doc. 32 at 6:10-14, 9:24-10:16, 20:19-20, 23:2-25:4). After reviewing the elements of the offense charged, the court found Monyoukaye to be fully alert, competent, and capable of entering an informed plea, (id. at 32:23-33:1), and determined, based on Monyoukaye's responses to the court's inquiries, that the plea was "knowing and

5

voluntary." (Id. at 33:1-2). The court therefore accepted Monyoukaye's guilty plea and scheduled sentencing. (Id. at 33:4-14).

After the guilty plea proceeding but prior to sentencing, Monyoukaye filed a *pro se* motion (Doc. 89) for withdrawal of counsel, arguing, *inter alia*, that Attorney Lord "failed to thoroughly perform an adequate pretrial investigation," (id. at 2), "overlooked [Monyoukaye's] issues," (id.), and "failed to properly communicate with his client." (Id. at 3). Monyoukaye also filed a motion (Doc. 90) to withdraw his guilty plea, taking issue primarily with his attorney's performance. The court ordered Attorney Lord to respond to the motion for new counsel (Doc. 91) and scheduled a hearing to address both motions for March 25, 2011. (Doc. 96). After an *ex parte* discussion with Monyoukaye and Attorney Lord, the court agreed with Monyoukaye that the attorney-client relationship was irreparably broken and granted Monyoukaye's motion for new counsel. (Doc. 98). The court denied Monyoukaye's motion to withdraw his guilty plea on the record without prejudice to the refiling of the same with the aid of new counsel.

On April 5, 2011, Jeffrey Conrad ("Attorney Conrad") was appointed on behalf of Monyoukaye. (Doc. 101). Attorney Conrad renewed Monyoukaye's motion (Doc. 103) to withdraw his plea of guilty on April 26, 2011. Therein, Monyoukaye argued that Attorney Lord did not inform him about his status as a career criminal or the resulting possibility of a life sentence, and that being surprised at trial "involuntarily and unknowingly coerced [him] into a plea." (Doc. 104 at 6).

6

On June 14, 2011, the court issued an opinion (Doc. 108) denying the motion, with reliance on United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (directing the court to examine(1) whether the defendant asserts innocence; (2) the strength of the defendant's reasons for withdrawal; and (3) whether the government would be prejudiced if the motion were granted). The court first found that Monyoukaye had failed to satisfy the innocence element, noting that he offered nothing beyond bald assertions in support of his innocence. (Doc. 108 at 7-8). As to the second factor, the court held that there was no evidence that Monyoukaye's "attorney's advice was under all the circumstances unreasonable under prevailing professional norms" or that "he suffered 'sufficient prejudice' from his counsel's errors" to warrant withdrawal of the plea. (Id. (quoting United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003)). The court expressly observed that Attorney Lord had ably represented Monyoukaye through jury selection, opening statements, and initial testimony. (Id. at 9-10). Most pertinent to the instant motion, the court also rejected Monyoukaye's contention that his guilty plea was "coerced" by shock upon learning of his career offender status, observing:

> Finally, Monyoukaye asserts ineffective assistance of counsel because trial counsel did not inform him that he was a career criminal and therefore subject to the possibility of life in prison. However, there is no evidence that Monyoukaye's status as a career criminal somehow coerced his plea. To the contrary, it provides a logical basis for a binding plea agreement and nothing transpired during the plea hearing which suggested otherwise. The purpose of the colloquy at the plea hearing was to "establish for the record that [Monyoukaye] fully and completely underst[ood] [his]

7

> rights under the law, as well as the consequences of a guilty plea." (Doc. 105 at 2). The colloquy lasted 45 minutes. The plea agreement was explained in detail, and Monyoukaye took advantage of the opportunity to speak privately with his counsel on six separate occasions. The court considers the number of times that Monyoukaye spoke with his attorney to be significant, as evidence that he was fully engaged at the plea hearing, that he considered the questions carefully, that he made informed responses, and that he did not hesitate to raise issues of concern.
>
> Based on Monyoukaye's responses during the plea hearing, the court finds that Monyoukaye was fully aware of his options to go to trial or accept the plea agreement, as well as the consequences of each. Even if it is true that Monyoukaye was unaware of his status as a career criminal when he arrived at trial, the plea bargain was not entered into lightly. The court made certain that Monyoukaye was thinking clearly and was not influenced by anything other than his own will. Therefore, the court finds that the third basis for ineffective counsel did not establish sufficient prejudice to satisfy [Strickland].

(Id. at 11-12). Because the government need not establish prejudice where the defendant fails to meet the first two Wilson elements, see Jones, 336 F.3d at 255 (citing United States v. Harris, 44 F.3d 1206, 1210 (3d Cir. 1995), the court denied the motion to withdraw the guilty plea. (Id. at 14).

Ten days after the court issued its opinion denying Monyoukaye's motion to withdraw his guilty plea, Monyoukaye filed a *pro se* motion (Doc. 109) to withdraw counsel. The court directed Attorney Conrad to file a response and convened an *ex parte* hearing on the motion on July 19, 2011. After questioning both Monyoukaye and Attorney Conrad, the court granted the motion to the limited extent that it allowed Monyoukaye to invoke his right to self-representation, appointing Attorney

8

Conrad as standby counsel but declining to appoint new counsel. (Doc. 117). After a continuance at Monyoukaye's request, the court convened a sentencing hearing on December 19, 2011. (See Doc. 137). Following a lengthy colloquy with the *pro se* defendant, the court sentenced Monyoukaye to 180 months imprisonment, (Doc. 132), the term contemplated by the Rule 11(c)(1)(C) provision in Monyoukaye's plea agreement. (Doc. 86 at ¶ 11).

Monyoukaye appealed the judgment and sentence on December 28, 2011. (Doc. 133). On January 6, 2012, the government filed a motion to enforce the plea agreement's appellate waiver and for summary affirmance. Monyoukaye's counsel filed opposition papers on his behalf, and on April 13, 2012, Monyoukaye filed a *pro se* brief opposing the government's motion. Therein, Monyoukaye again claimed that he was not made aware of his potential career offender status until the second day of trial and that Attorney Lord's failure to advise him of the resulting guideline range "coerced" him into accepting an involuntary plea agreement. The Third Circuit disagreed and found that Monyoukaye's appellate waiver was knowing and voluntary, summarily enforcing the same and affirming Monyoukaye's conviction and sentence.

On August 26, 2013, Monyoukaye filed the pending motion (Doc. 151) to vacated, set aside, or correct sentence under 28 U.S.C. § 2255, asserting one claim for ineffective assistance of counsel with regard to Attorney Lord. The government filed a brief in opposition (Doc. 154) on September 16, 2013, and Monyoukaye filed a

reply brief (Doc. 156) on October 7, 2013. The motion is fully briefed and ripe for disposition.

## II. Legal Standard

A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this claim, a petitioner must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) that the deficient representation was prejudicial. Id. at 687-88. A determination of ineffective assistance of counsel necessarily relies on consideration of the totality of unique circumstances in each case. United States v. Baynes, 687 F. 2d 659, 665 (3d Cir. 1982). Conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. See Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct. See id. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90). Counsel will not be deemed ineffective for failing to raise a meritless claim. United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999). The

10

Supreme Court has extended the Sixth Amendment right to effective assistance of to the plea bargaining process. Missouri v. Frye, 132 S. Ct. 1399, 1407 (2012) ("The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages."); Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012).

To satisfy the prejudice prong, the petitioner must show that, but for counsel's errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. The district court need not carry out its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. Id. at 697. Moreover, when the record affirmatively indicates that a petitioner's § 2255 claim for relief is without merit, the claim may be decided on the record without a hearing. See Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985).

### III. Discussion

In his *pro se* Section 2255 motion, Monyoukaye reiterates many of the same arguments which he raised when he attempted to secure new counsel and to withdraw his guilty plea. Specifically, Monyoukaye contends that Attorney Lord "never notified him about the government's plea offer until very late in the proceedings, . . . never addressed any of those issues in which defendant sought to have clarified, and ultimately the government withdrew its [initial] offer, . . . and

11

only addressed the issues of his concern on the very day in which jury selection was to begin unbeknownst to [Monyoukaye]." (Doc. 151 at 9-11). In his memorandum, Monyoukaye acknowledges that his plea agreement contains a broad appellate waiver, but posits that because counsel's performance in the plea bargaining process was deficient, the waiver cannot be enforced to preclude his ineffective assistance of counsel claim. (Doc. 151 at 16). Following a review of the record, the court concludes that Monyoukaye's arguments are without merit.

As a general rule, courts will enforce waivers of direct and collateral appeal rights "provided that they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." United States v. Mabry, 536 F.3d 231, 237-38 (3d Cir. 2008) (quoting United States v. Khattak, 273 F.3d 557 (3d Cir. 2001)). The court retains an independent duty to examine the record with respect to both of these questions. Id. at 238. An examination of the record and Monyoukaye's allegations reveals that his appellate waiver was executed voluntarily and with full knowledge of the waiver's implications.

As the court has indicated above, paragraph 21 of Monyoukaye's written plea agreement states that:

> The defendant is aware that Title 18, United States Code, Section 3742, affords a defendant with the right to appeal the conviction and sentence imposed. Acknowledging all of this, the defendant knowingly waives the right to appeal any conviction and sentence on any and all grounds as set forth in Title 18, United States Code, Section 3742, or any other grounds, constitutional or nonconstitutional, including the manner in which that sentence was determined in light of the Supreme Court's

12

> decision of United States v. Booker. The defendant also waives the defendant's right to challenge any conviction or sentence or the manner in which the sentence was determined in any collateral proceeding, including, but not limited to, a motion brought under Title 28 of the United States Code, Section 2255.

(Doc. 86 at ¶ 21). The court questioned Monyoukaye at length during his change of plea hearing to ascertain his understanding of the waiver, reading the language of the waiver aloud and repeatedly questioning Monyoukaye as to his willingness to accept the appellate waiver. (Doc. 32 at 23:2-25:4). See FED. R. CRIM. P. 11(b)(1)(n) (requiring the court to place the defendant under oath and question him in open court in order to ascertain his understanding that he is waiving his appellate and collateral attack rights). Monyoukaye affirmed his understanding of the substance and breadth of the waiver and repeated his desire to plead guilty. The court thus finds that Monyoukaye's waiver was both knowing and voluntary.

As Monyoukaye emphasizes, a collateral waiver, even if knowing and voluntary, may still be set aside if enforcement would create a miscarriage of justice. The Third Circuit has set forth an open-ended list of factors that a district court should consider in determining whether enforcement of a collateral waiver would result in a miscarriage of justice. See United States v. Shedrick, 493 F.3d 292, 298 n.6 (3d Cir. 2007) (citing Khattak, 273 F.3d at 563; United States v. Teeter, 257 F.3d 13, 25-26 (1st Cir. 2001)). These factors include "how clear and grave an error existed, the effect of that error on the parties, and the extent to which the defendant acquiesced in the error." Id.; see also Mabry, 536 F.3d at 243. The court

13

also held that enforcing a collateral waiver when trial counsel was constitutionally ineffective in negotiating the appellate waiver would result in a miscarriage of justice. See Shedrick, 493 F.3d at 298 n.6. It is this final exception upon which Monyoukaye rests his Section 2255 motion.

As noted, in order to avoid the Section 2255 bar established by his otherwise voluntary and knowing appellate waiver, Monyoukaye must show that Attorney Lord's efforts in negotiating the plea agreement, in particular the appellate waiver, were so unreasonable as to be constitutionally deficient. See Shedrick, 493 F.3d at 298 n.6. The record plainly does not support such a finding. Indeed, not one of the arguments offered by Monyoukaye attacks the validity of the appellate waiver itself or the reasonableness of its inclusion in his plea agreement; instead, Monyoukaye blames trial counsel for the expiration of the government's more favorable pre-trial plea offer. (Doc. 151 at 9-11). Not only is that allegation unsupported by the record—which indicates that Monyoukaye initially accepted but ultimately rejected the government's pre-trial offer, electing instead to proceed to trial (see Doc. 138 at 11:7-14:7)—it does not demonstrate that inclusion of the waiver in the executed plea agreement somehow works a miscarriage of justice.

Rather, the appellate waiver contained in Monyoukaye's plea agreement reflects the informed give-and-take which so often governs the plea bargaining process. As a result of the bargaining efforts of his trial counsel, Monyoukaye received the substantial benefit of sentence reduced by more than 80 months in exchange for a full relinquishment of his appellate rights. Further, as a result of the

14

agreement, Monyoukaye avoided a conviction for use of a firearm during a crime of violence, a crime which carried a much more severe statutory penalty. All in all, the plea agreement drastically reduced Monyoukaye's sentencing exposure. The court cannot conclude, under all of the circumstances, that counsel's efforts in striking this plea bargain with the government were unreasonable or ineffective. Certainly, counsel's efforts do not amount to a miscarriage of justice. The court will thus decline Monyoukaye's invitation to invalidate the knowing and voluntary appellate waiver to which he once acceded, and dismiss his Section 2255 motion.

## V. Conclusion

For the foregoing reasons, the court will deny Monyoukaye's motion (Doc. 151) to vacate, set aside or correct sentence under 18 U.S.C. § 2255. An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: November 19, 2013